IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01731-PAB-KMT

JORGE ORTIZ, as next friend and parent of I.O., a minor,

    Plaintiff,

v.

UNITED STATES OF AMERICA, by and through Evans Army Community Hospital,

    Defendant.

---

**ORDER**

---

This matter is before the Court on the Motion to Dismiss [Docket No. 37] filed by defendant the United States of America. Plaintiff Jorge Ortiz, as next friend and parent of minor child I.O., asserts a claim of negligence against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and §§ 2671-2680.[1] Defendant requests that the Court dismiss plaintiff's negligence claim pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Because defendant's Rule 12(b)(1) motion attacks the Court's subject matter jurisdiction based on *Feres v. United States*, 340 U.S. 135 (1950), the Court will convert defendant's motion to

---

[1] On December 20, 2012, the Court dismissed without prejudice the following defendants: Kathryn M. Zamboni-Cutter, M.D., Stephen Jones, M.D., Donald Robinson, M.D., Catherine Hadley, R.N., C.N.M., Kris Peters, R.N., Dodi Johnson, R.N., Carol Putzi, R.N., Elizabeth DiCampli, R.N., Renee Williams, R.N., Ann Boland, R.N., Sunhee Lee, R.N., Mary Goecker, R.N., Annie Mai, R.N., Andrea Novian, L.P.N., Theresa Maximenko, L.P.N., Cindy Rau-Sobotka, C.R.N.A., Koko Cantrell, C.R.N.A., Emily LeClair, C.R.N.A. from this case. Docket No. 61. The United States is now the only remaining defendant.

dismiss into one for summary judgment given that jurisdictional issues are intertwined with the merits of plaintiff's case. *Pringle v. United States*, 208 F.3d 1220, 1224 (10th Cir. 2000). However, as discussed below, additional discovery is not necessary to resolve this motion on the merits because, even assuming disputed facts favorably to plaintiff, plaintiff's claims are barred by the *Feres* doctrine.

## I. BACKGROUND[2]

On March 16, 2009, Captain Heather Ortiz was admitted to Evans Army Community Hospital ("EACH"), a military hospital located on the Fort Carson Army base in Colorado Springs, Colorado, for the operative delivery of her child, I.O., via caesarean section. Docket No. 8 at 6, ¶ 49. In March 2009, Captain Ortiz was an active duty service member with the United States Air Force. Docket No. 37-1 at 1, ¶¶ 2-3. In preparation for the caesarean section, registered nurse Elizabeth DiCampli administered Zantac,[3] a drug commonly used as a preoperative medication to prevent aspiration of gastric acid, to Captain Ortiz. Docket No. 8 at 7, ¶ 56; Docket No. 37-2 at 1-2, ¶¶ 6-8. DiCampli knew or should have known that Captain Ortiz was allergic to Zantac. Docket No. 8 at 7, ¶¶ 51-52. After administering Zantac, DiCampli left the

---

[2]The following facts are drawn from plaintiff's Redacted Complaint [Docket No. 8] and declarations the parties submitted in connection with the motion to dismiss [Docket Nos. 37-1, 37-2 and Docket Nos. 57-1 to 57-3]. These facts are assumed to be true unless otherwise indicated.

[3]Zantac is the trade name for ranitidine, which is a drug commonly administered prior to a caesarian section in order to prevent pulmonary damage. Docket No. 57-1 at 2, ¶ 5. Dr. Kathryn Zamboni Cutter states in her affidavit that she ordered the administration of Zantac to reduce Captain Ortiz's risk of chemical pneumonitis. Docket No. 37-2 at 2, ¶ 7.

operating room and did not return for twenty minutes. *Id*. at ¶¶ 59-60. Captain Ortiz suffered an allergic reaction as a result of the Zantac. *Id*. at ¶ 58.

The medical care Captain Ortiz received after the administration of Zantac was negligent. *Id*. at ¶ 61. First, DiCampli administered Benadryl[4] to Captain Ortiz, which was negligent because the Benadryl caused a drop in Captain Ortiz's blood pressure, rendering Captain Ortiz hypotensive.[5] *Id*. at 8, ¶¶ 62-64. Second, the military medical staff failed to provide adequate medical care to treat Captain Ortiz's blood pressure after the administration of Benadryl. *Id*. at ¶¶ 66-67. Third, the military medical staff failed to monitor the fetal monitoring strips during the caesarean section. *Id*. ¶¶ 68-70. As a result of the military medical staff's negligent administration of Benadryl and negligent monitoring of the fetal monitoring strips, I.O. suffered severe injuries including, but not limited to, "a hypoxic brain injury which has resulted in cerebral palsy." *Id*. at 8-9, ¶ 72.

Dr. Kathryn Zamboni-Cutter, the board certified obstetrician who oversaw Captain Ortiz's caesarean section, submitted a declaration in support of defendant's motion to dismiss. Docket No. 37-2. In her declaration, Dr. Zamboni-Cutter states that she ordered the administration of Benadryl "as a prophylactic medication to counter any potential allergic reaction" that Captain Ortiz might have suffered as a result of the Zantac. *Id*. at 2, ¶ 10. Dr. Zamboni-Cutter states that the administration of "both

---

[4]Benadryl is the trade name for diphenhydramine, which is an antihistamine that is usually administered to counter allergic reactions. Docket No. 57-1 at 2, ¶ 6.

[5]Hypotension occurs in a pregnant woman when the blood flow is inadequate to perfuse the uterus and the placenta, potentially causing harm to a fetus. Docket No. 57-1 at 3, ¶ 7

3

Zantac and Benadryl was for the benefit of Captain Ortiz, not for the benefit of I.O." *Id*. at ¶ 12. Plaintiff disputes this fact and, in support, presents the affidavits of Dr. Aaron Caughey and registered nurse Kathy Andersen who both state that Benadryl was administered during delivery to prevent the risk of injury to Captain Ortiz and to I.O.[6] *See* Docket No. 57-1 at 2, ¶ 6; Docket No. 57-2 at 2, ¶ 6.

On July 3, 2012, plaintiff filed this case, asserting claims of negligence against defendant based on the military medical staff at EACH committing malpractice during Captain Ortiz's caesarean section. *See* Docket No. 8. On October 9, 2012, defendant filed the present motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the Court lacks subject matter jurisdiction over this case. *See* Docket No. 37.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An

---

[6]Viewing this evidence in a light most favorable to plaintiff, the Court will assume that the Benadryl was administered for the benefit of both Captain Ortiz and I.O. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

4

issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

## III.   ANALYSIS

### A.   FTCA Claim

Defendant argues that the Court lacks subject matter jurisdiction because plaintiff's medical negligence claim is barred by *Feres v. United States*, 340 U.S. 135 (1950), which held that the FTCA does not waive sovereign immunity of the United States for claims brought against the United States by active-duty service members. Given that "the United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction," *United States v. Mitchell*, 463 U.S. 206, 212 (1983), defendant asserts that the Court has no subject matter jurisdiction over this case. Docket No. 37 at 7-10. Specifically, defendant claims that, because Captain Ortiz's medical care at the time of plaintiff's delivery was incident to her military service, the *Feres* doctrine applies even though plaintiff and I.O. are civilians. *Id*. at 5-7. In response, plaintiff asserts that, because I.O. was not an active duty service member, her claim is not barred by *Feres*. Docket No. 57 at 2-3. Plaintiff claims that, because the administration of Benadryl and the monitoring of the fetal monitoring strips was for the benefit of both Captain Ortiz and I.O., the *Feres* doctrine does not bar I.O.'s claim since it is based on an injury that is independent from any injury Captain Ortiz suffered. Docket No. 57 at 2-3, ¶ 3; Docket No. 57-1 at 2, ¶ 6.

### *1. The Feres Doctrine*

The FTCA waives the sovereign immunity of the United States and allows suits against the federal government for injuries caused by the negligence of government employees acting within the scope of their employment to the same extent that a private individual would be liable for such negligence.  28 U.S.C. § 1346(b); *Mitchell*, 463 U.S. at 212.  In *Feres*, the Supreme Court interpreted the FTCA as not waiving sovereign immunity for actions brought by active duty military personnel.  340 U.S. at 146.  Specifically, the Supreme Court held that the federal government is not "liable under the Federal Tort Claims Act for injuries to servicemen where the injures arise out of or are in the course of activity incident to service," *id*., which has become known as the "incident to service" test.  The Supreme Court has identified three rationales for the *Feres* doctrine: first, the distinctly federal nature of the relationship between the government and members of its armed forces; second, the existence of the Veterans' Benefits Act, which provides a form of no-fault compensation for injured members of the military; and, third, the special relationship between a service member and his or her superiors.  *United States v. Shearer*, 473 U.S. 52, 57 (1985).  These three rationales comprise the "special factors" analysis some courts use to determine the applicability of the *Feres* doctrine to a particular case.  *Ricks v. Nickels*, 295 F.3d 1124, 1128-29 (10th Cir. 2002).

In recent years, the Supreme Court has broadened the *Feres* doctrine so that it now encompasses "at a minimum *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military."  *Pringle v.*

*United States*, 208 F.3d 1220, 1223-24 (10th Cir. 2000) (emphasis in the original); *see also Ricks*, 295 F.3d at 1127-28 (collecting cases).  Nevertheless, the Supreme Court has emphasized that it has never deviated from the "incident to service" test.  *United States v. Johnson*, 481 U.S. 681, 686 (1987).  Because *Feres* "cannot be reduced to a few bright-line rules[,] each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases."  *Shearer*, 473 U.S. at 57.

### 2. Lack of Alternative Remedy

Plaintiff argues that, as a civilian, I.O. has no other form of compensation for her injuries were the *Feres* doctrine to preclude her FTCA claim.  Docket No. 57 at 9.  Some courts have considered this argument under the special factors test and found it relevant.  *See, e.g., Romero v. United States*, 954 F.2d 223, 226 (4th Cir. 1992).  However, the Tenth Circuit and the Supreme Court have determined that the argument is irrelevant.  As stated in *Ricks*, 295 F.3d at 1129 n. 4, "whether a servicemember has adequate federal remedies for his injuries is 'irrelevant.' *United States v. Stanley*, 483 U.S. 669, 683 (1987) ("The special factor that counsels hesitation is not the fact that Congress has chosen to afford some manner of relief in the particular case, but the fact that congressionally uninvited intrusion into military affairs by the judiciary is inappropriate." (alterations omitted))."

Obviously, application of *Feres* to this case, assuming plaintiff could prove liability, would have a devastating effect on plaintiff's family.  Cerebral palsy is a disabling condition that has undoubtedly greatly diminished the quality of I.O.'s life and burdened her family with enormous medical costs.  However, as many other courts

7

have noted, the often harsh consequences of the application of *Feres* are a consequence of sovereign immunity.

### 3. Applicability of Feres Doctrine to Third Party Civilians

Plaintiff argues that *Feres* does not apply to either him or to I.O. because they are civilians and Captain Ortiz is not a party to the suit. *See* Docket No. 57 at 5-7. The Supreme Court, however, has held that the *Feres* doctrine precludes suits by third parties for claims that derive directly or indirectly from injuries to service members incident to military duty. *See, e.g., Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673 (1977) (noting that, "where the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is identical whether the suit is brought by the soldier directly or by a third party"). As a result, the fact that plaintiff and I.O. are not service members, by itself, does not preclude application of the *Feres* doctrine.

### 4. Applicability of Feres Doctrine to Medical Malpractice Claims by Children of Servicewomen Involving Prenatal or Obstetrical Harm

Plaintiff claims that "civilian dependents who are victims of malpractice during the prenatal and labor and delivery time period also routinely recover for their injuries pursuant to the FTCA." Docket No. 57 at 6. Courts considering such claims have used different approaches for their analyses. Some courts have applied the special factors analysis, *see Scales v. United States*, 685 F.2d 970, 974 (5th Cir. 1982); *Del Rio v. United States*, 833 F.2d 282, 287 (11th Cir. 1987); some courts have applied the "genesis test," *see Irvin v. United States*, 845 F.2d 126 (6th Cir. 1988); and some courts have applied what can be characterized as a "sole purpose" or "independent injury"

test. *See Romero*, 954 F.2d at 225-227; *Brown v. United States*, 462 F.3d 609, 613-616 (6th Cir. 2006). The Court examines these cases below.

### a. Special Factors Analysis

In *Scales*, the son of a servicewoman sued the United States based on allegedly negligent prenatal treatment that his mother received during basic training in the Air Force. The son claimed the government's negligence resulted in him contracting congenital rubella syndrome with attendant serious health problems. 685 F.2d at 971-972. The court in *Scales* considered the three special factors identified by the Supreme Court as supporting the *Feres* doctrine, but noted that the third factor, preserving military discipline, "stands out as the most important consideration." *Id*. at 973. *Scales* held that the *Feres* doctrine barred the son's claim. The court reasoned that, "[i]f we accept the argument that a suit brought by Charles' mother would tend to undermine military discipline, which we must since it is the law, then it is impossible to see how the result should be different if Charles sues the government instead." *Id*. at 974. The court also noted, independent of the special factors analysis, that

> Charles' allegations of negligence . . . focus entirely on the medical treatment that Air Force physicians gave his mother. The treatment accorded his mother is inherently inseparable from the treatment accorded Charles as a fetus in his mother's body.

*Id*.

In *Del Rio*, a servicewoman and her children sued the United States based on the allegedly negligent prenatal care she received while she was on active duty, which caused one of her twin sons to live only five days and the other to have bodily injuries. 833 F.2d at 284. The court applied all three of the special factors, believing that,

although *United States v. Shearer*, 473 U.S. 52, 56-57 (1985), emphasized the third factor, *United States v. Johnson*, 481 U.S. 681 (1987), "unequivocally expanded the *Feres* analysis to include all three rationales." 833 F.2d at 285-286. Applying these factors to the servicewoman's claim, the court found that the *Feres* doctrine precluded it. However, the court found that the "three *Feres* rationales clearly are not present in a suit by the child of a service person for the negligence of military medical staff." *Id.* at 287. The court determined that the first two special factors were inapplicable and that, as to the third factor, "suit by a civilian child for the negligent administration of prenatal care need not impair the esprit de corps necessary for effective military service, nor will it require the court to second-guess a decision by military personnel unique to the accomplishment of a military mission." *Id.* The court thus ruled that *Feres* did not bar the children's negligence claim against the United States. The Court does not find the analysis of *Del Rio* helpful here.

The fact that *Del Rio* used the third special factor to determine the effect of the children's suit on military discipline is inconsistent with the Tenth Circuit's analysis in *Ricks*, 295 F.3d at 1129-1130. In *Ricks*, the Tenth Circuit noted that the Supreme Court in *United States v. Stanley*, 483 U.S. 669, 681 (1987), "explicitly rejected a 'special factors' analysis which would consider how military discipline would actually be affected in a particular case." In *Stanley*, the Supreme Court stated that a "test for liability that depends on the extent to which particular suits would call into question military discipline and decisionmaking would itself require judicial inquiry into, and hence intrusion upon, military matters." *Id.* at 682. Instead, *Stanley* held that

application of the "'incident to service' test, by contrast, provides a line that is relatively clear and that can be discerned with less extensive inquiry into military matters." *Id.* at 683. Because *Del Rio* rests on a prediction about the effect the children's suit would have on military discipline, which both *Stanley* and *Ricks* state is inappropriate, the Court does not consider *Del Rio* to be persuasive authority.

### b. The Genesis Test

The genesis test evolved from the Supreme Court's decision in *Stencel*, which held that a third party's claim that was derivative of a serviceman's claim is also barred under *Feres*.[7] 431 U.S. at 673. The Supreme Court found that the third party's claim was one which had a basis in the serviceman's claim and would not exist but for the serviceman's claim. *Id*. Some appellate courts have expanded *Stencel* to bar derivative claims where the injury to a dependent had its "genesis" in a service-related injury to the service member. *See Irvin*, 845 F.2d at 130 (listing cases); *Hinkie v. United States*, 715 F.2d 96, 98-99 (3d Cir. 1983); *Minns v. United States*, 155 F.3d 445, 449-50 (4th Cir. 1998); *Mossow v. United States*, 987 F.2d 1365, 1369-70 (8th Cir. 1993); *Monaco v. United States*, 661 F.2d 129, 133 (9th Cir. 1981); *Lombard v. United States*, 690 F.2d 215, 226 (D.C. Cir. 1982).

---

[7]In *Stencel*, a serviceman was injured because of an aircraft malfunction. The serviceman sued the aircraft manufacturer, and the manufacturer sued the United States for indemnity. The Supreme Court found that the rationale for the *Feres* doctrine applied with equal force whether a suit is brought by the serviceman or by a third party, and barred the manufacturer's claim under *Feres*. *Stencel*, 431 U.S. at 673.

In *Irvin*, a former servicewoman and her husband, individually and on behalf of their deceased child, brought an FTCA claim against the United States for providing negligent prenatal care. 845 F.2d at 127. After noting that "[m]any other courts have also denied independent claims of family members when the genesis of the injury was an injury to an active duty service person," *id*. at 130, the court cited that portion of *Scales* where the Fifth Circuit stated that, because the "treatment accorded his mother is inherently inseparable from the treatment accorded Charles as a fetus in his mother's body," a lawsuit by the child would place the court in the position of "questioning the propriety of decisions or conduct of fellow members of the Armed Forces," which *Feres* seeks to avoid. *Scales*, 685 F.2d at 974. *Irvin* therefore adopted the genesis test as being consistent with Supreme Court precedent and barred the child's claim. 845 F.2d at 131.

Application of the genesis test to plaintiff's claim on behalf of I.O. results in a finding that his claim is barred. The genesis of I.O.'s injury was an injury to her mother. The complaint alleges that hospital employees gave Zantac to Captain Ortiz, Docket No. 8 at ¶ 56, that "[a]s a result of the negligent administration of Zantac," Captain Ortiz had an allergic reaction, *id.* at ¶ 58, and that Captain Ortiz was then given Benadryl, *id.* at ¶ 62, which caused her to become hypotensive, *id.* at ¶ 64, a condition that negligent fetal monitoring did not discover. *Id*. at ¶¶ 68-70. Thus, an injury to the mother -- an allergic reaction to Zantac -- necessitated the administration of the drug that caused hypotension and resultant hypoxia in I.O.

### c. Sole Purpose or Independent Injury Test

In an effort to avoid application of the genesis test, plaintiff cites cases where courts distinguished medical treatment given for the benefit of the mother from treatment given for the benefit of the fetus. In *Romero*, active duty spouses and their son, Joshua, filed suit against the United States under the FTCA alleging that negligent prenatal care provided to the mother resulted in the son's cerebral palsy. 954 F.2d at 224. The mother had congenital cervical weakness. Plaintiffs claimed that the doctors should have placed sutures in the mother's cervix to minimize the risk of premature labor, which could then be removed immediately before normal labor. Plaintiffs argued that the failure to place such sutures caused the son to be born prematurely and thereby caused his cerebral palsy. *Id.* at 225. The court held that "claims brought by civilians and civilian dependents of service members who have directly sustained injuries from military personnel are not *Feres*-barred." *Id*. It therefore held that *Feres* did not bar the claim of the son. In reaching this conclusion, the court found that the congenital cervix condition, while placing the fetus at risk of injury, did not affect the mother's health. Thus, had the sutures been placed in the mother, their "sole purpose would have been directed at preventing injury to Joshua." *Id*. "Because the purpose of the treatment was to insure the health of a civilian, not a service member, *Feres* does not apply." *Id*. *Romero* also specifically held that application of the genesis test was inappropriate. It found that the son's "injury did not derive from any injury suffered by a service member, but was caused when the government breached an affirmative duty of

care owed directly to him." *Id*. at 226. *Romero* applied the three special factors in support of its conclusion as well. *Id*.

In *Brown*, the civilian husband of an active duty wife sued the United States based on a military doctor's recommendation that his wife, who was trying to have a child, discontinue taking prenatal vitamins. The wife followed his advice, conceived during a time period when she was not taking the vitamins, and later gave birth to a daughter with a neural tube defect from lack of folic acid, which the prenatal vitamins contained. The wife experienced no physical injuries from the allegedly negligent prenatal treatment. 462 F. 3d at 611. The court held that the *Feres* doctrine did not apply "because Melody's injury was not derivative of any injury to her mother but was, rather, the result of negligence affecting Melody directly (albeit *in utero*)." *Id*. at 612. As in *Romero*, the court also applied the three special factors analysis in support of its ruling. *Id*. at 613-614.

*Romero* and *Brown* distinguished cases such as *Scales* and *Irvin* on the ground that the injury to the child *in utero* was either the result of a medical procedure directed (or not directed) solely at the fetus or that the injury occurred to the child and not to the mother. However, when this test is applied here, the result is the same as application of the genesis test. First, the allergic reaction to Zantac was a harm to Captain Ortiz, not to I.O. As the court in *Brown* acknowledged, "we would be obliged by *Irvin* to apply the *Feres* doctrine to bar the plaintiff's claim on his daughter's behalf had the injury to the child been caused by an injury to her mother." 462 F.3d at 614. Second, plaintiff admits that "Benadryl was given to prevent injury and to benefit both Ms. Ortiz and I.O.,"

Docket No. 57 at 13, which distinguishes this case from both *Romero* and *Brown*. Even putting aside the fact that the Benadryl was given to prevent or counteract a harm to Captain Ortiz, the alleged causative agent of I.O.'s harm was, according to plaintiff, given for both Captain Ortiz' and I.O.'s benefit. Thus, any challenge to the administration of Benadryl would call into question military decision-making regarding active duty service members that lies at the heart of the *Feres* doctrine.[8] *See Hayes v. United States on Behalf of United States Army*, 44 F.3d 377, 378-79 (5th Cir. 1995) ("Medical malpractice by a physician employed by the military, in a military hospital, and in the course of treatment of a person in active military service has been clearly held to fall within 'the course of activity incident to service.'" (citation omitted)); *Connell v. Copeland*, 417 F. App'x 3, 4 (D.C. Cir. 2011) (same).

Alternatively, plaintiff argues that, "after the administration of Benadryl, the providers were required to monitor the unborn child," which monitoring is "treatment provided solely for the benefit of the civilian baby." Docket No. 57 at 15. Plaintiff's claim with regard to the fetal monitoring strips is also barred by the *Feres* doctrine as it is derived from the injury caused by the administration of Zantac and Benadryl. Plaintiff's causal theory with regard to the monitoring strips is necessarily derived from the injury suffered by Captain Ortiz as a result of the administration of Zantac and Benadryl. In other words, but for the administration of the Zantac and Benadryl to

---

[8] Plaintiff argues that injuries are not "incident to service" where treatment is directed "*primarily* towards the civilian," citing *Brown*. Docket No. 57 at 6 (emphasis added). However, neither *Brown* nor any other case that the Court has found excepts an FTCA claim in similar circumstances based on treatment primarily directed at the unborn child.

Captain Ortiz, failure to review the fetal monitoring strips in this case would not have caused I.O. injuries. Thus, given that plaintiff's fetal monitoring claim necessarily derives from Captain Ortiz's service-related injury, the Court finds that plaintiff's claim for negligence based on the failure to review the fetal monitoring strips is barred by the *Feres* doctrine. *Pringle*, 208 F.3d at 1223.

In summary, regardless of what test is applied, the result is the same. A special factors analysis focused on the third factor, as in *Scales*, leads to the conclusion that allowing I.O.'s claim would call into question military decisionmaking and discipline since the medical care provided to Captain Ortiz cannot be meaningfully distinguished from that provided to I.O. Use of the genesis test shows that the alleged negligence that harmed I.O. stemmed from a harm to her mother. And use of the sole purpose or independent injury test shows that Captain Ortiz had an injury (allergic reaction) that was independent of any injury to I.O. that the medical providers treated with the purpose of benefitting Captain Ortiz and I.O., but not solely I.O. Each of these different analyses is simply a context specific variant of the underlying principle, the incident to service test. Here, the Court finds that the harm to I.O. was incident to the service of her mother, Captain Ortiz. Plaintiff's claims are therefore barred by the *Feres* doctrine.

### B. Motion to Defer Ruling on Motion to Dismiss to Allow for Discovery

Plaintiff has filed a Motion to Defer Ruling on Defendant USA's Motion to Dismiss [Docket No. 58], requesting that the Court delay ruling on defendant's motion to dismiss because the resolution of the jurisdictional question "requires resolution of an aspect of" the substantive claim at issue. Docket No. 58 at 3, 2-3, ¶ 2. Plaintiff argues

that there are disputed questions of fact regarding for whose benefit the military medical staff provided the Benadryl. *Id*. at, ¶ 3. Plaintiff claims that additional discovery will help him resolve that issue and argues that discovery is necessary because all of the medical information is within the sole possession of defendant. *Id*. at 4, ¶¶ 5-6.

A party may seek limited discovery under Rule 56(d) of the Federal Rules of Civil Procedure in order to respond to a summary judgment motion. Rule 56(d) allows a court to stay or deny a summary judgment motion in order to permit further discovery if the nonmovant states by affidavit that it lacks facts necessary to oppose the motion. *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). In order to be afforded relief, plaintiff must show (1) that necessary probable facts are not available, (2) why those facts cannot be presented currently, (3) "what steps have been taken to obtain these facts," and (4) "how additional time will enable [plaintiff] to" obtain those facts and rebut the motion for summary judgment. *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992).

The Court finds that plaintiff has not met his burden of showing that additional discovery will likely change the outcome of defendant's motion. Plaintiff's own expert, Dr. Aaron Caughey, states in his affidavit that the administration of the Benadryl was for the benefit of both Captain Ortiz and I.O. Docket No. 57-1 at 2, ¶ 6. Given the fact that the Benadryl was *not* administered solely for the benefit of I.O., plaintiff's case is distinguishable from *Brown* and *Romero* and, therefore, the Court finds additional discovery irrelevant to the resolution of the jurisdictional issue. Furthermore, defendant states that plaintiff is in possession of the fetal monitoring strips, Docket No. 62 at 3,

and plaintiff has not explained why further discovery regarding the fetal monitoring strips will alter the application of the *Feres* doctrine in this case. Even if plaintiff deposed the military medical staff present at the time of the delivery, it will not discount the fact that plaintiff admits that the medical treatment in this case was in part to benefit Captain Ortiz. Accordingly, the Court will deny plaintiff's request for additional discovery.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the United States' Motion to Dismiss [Docket No. 37], converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 56, is **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion to Defer Ruling on Defendant USA's Motion to Dismiss [Doc. 37] and Allow Time for Discovery [Docket No. 58] is **DENIED**. It is further

**ORDERED** that this case is dismissed in its entirety. It is further

**ORDERED** that, within 14 days of this Order, defendant United States of America may file its bill of costs with the Clerk of the Court.

DATED September 30, 2013.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge